# MAYOR AND CITY COUNCIL OF BALTIMORE *vs.* MARY E. GARRETT.

*Restrictive Covenant in Deed as to Use of Land—Discharge of Covenant by Failure of Grantor to Insert Similar Covenant in Other Deeds According to His Agreement.*

In the deed under which plaintiff took title, and by which a part of an estate or tract of suburban land was conveyed, it was covenated between the grantor and grantee and their respective heirs and assigns, for the benefit of all other purchasers of the remainder of the estate, as well as for the grantor, that the grantee and his assigns would erect ·only a private residence or residences on the land conveyed, and would not at any time erect or use thereon, any public house, or house of amusement, provided however that the grantor "shall cause to be inserted similar clauses in all other deeds to said purchasers," which he thereby covenanted to do. In fifteen out of seventeen deeds conveying other parts of said tract, a similar restrictive covenant was inserted, but in two deeds conveying parts thereof, there was no such covenant. *Held*, that the restriction was part of a general scheme for the benefit of all of the purchasers of the designated tract; that the expression in plaintiff's deed, "remainder of the estate," means all of the said tract not embraced in that deed, whether previously or subsequently conveyed to a purchaser; that the restrictive covenant in plaintiff's deed was not absolute, but was expressly made dependent upon the condition that the grantor should cause the same covenant to be inserted in all other deeds of the remainder of the tract, which the grantor covenanted to do; that the omission of this covenant from two deeds conveying part of the estate was a breach of his covenant by the

grantor, and operated to release the land conveyed to plaintiff's assignor from the restriction, and to discharge the plaintiff from the obligation of the covenant.

*Decided April 1st, 1908.*

Appeal from the Circuit Court No. 2, of Baltimore City (GORTER, J.)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER and BURKE, JJ.

*Joseph S. Goldsmith* (with whom was *W. Cabell Bruce* on the brief), for the appellant.

*D. K. Este Fisher*, for the appellee.

PEARCE, J., delivered the opinion of the Court.

This is an appeal from a decree of Circuit Court No. 2, of Baltimore City, specifically enforcing a contract of sale of a parcel of land in the northeastern section of Baltimore City, containing about twenty-four acres of land, which constituted part of the estate of the late John W. Garrett, and which, in the partition of his estate, was allotted to his daughter, Miss Mary E. Garrett, the present appellee. The bill alleges that on September 28th, 1907, the appellee entered into a written contract with the Mayor and City Council of Baltimore to sell said parcel of land to said Mayor and City Council for a certain stipulated price, to be paid in cash upon the verification of the acreage by the engineer of the Park Board, and the execution and delivery by the appellee to the Mayor and City Council, of a deed for said parcel of land in fee simple, clear of all incumbrances at the date of said delivery.

The bill further alleges that the acreage has been duly verified, and that the plaintiff's title to the land is an unincumbered title in fee simple, which she is ready, willing, and able to convey, and has so tendered herself, but the said Mayor and City Council, waiving a formal tender of such deed, assert that she is not vested of said title, because in a certain deed

which the plaintiff admits is in her chain of title, and which
affects 16 acres, 1 rood, and 28 perches of said tract, namely,
a deed from the executors of John Gibson, deceased, to Henry
Grabenhorst, dated October 24th, 1866, duly recorded, there
is the following covenant:

"And the said Henry C. Grabenhorst for himself, his heirs,
executors, administrators, and assigns, doth hereby covenant
with said parties of the first part, and the survivor of them,
and the heirs and assigns of the survivor, for the benefit as
well of all other purchasers of the *remainder* of said Chestnut
Hill estate, their heirs and assigns, as of the said executors
and trustees, and their heirs and assigns, that he will only
erect or suffer to be erected a private residence, or residences,
of a respectable character thereon, and the necessary out-
buildings appurtenant thereto, and that he, his heirs or assigns,
will not at any time erect, keep or use thereon any public
house or house of amusement or entertainment, or suffer or
permit any house upon said premises to be built, or kept, or
used for such purpose or any of them, *Provided however, that
said executors and trustees shall cause to be inserted similar
clauses in all other deeds to said purchasers, which they hereby cov-
enant to do.*"   The bill further alleges that the said Mayor and
City Council was making the purchase in order to use the
land for a city park, and insists that said covenant is so far an
incumbrance upon said land as to prevent the city from erect-
ing upon it such structure or structures as are suitable for a
public park, and for that reason only is unwilling to accept
the title thereto.

The bill further alleges that since said deed was made, the
extension of the city limits has brought said land within said
limits, and that the establishment of a public city park thereon
was not in the contemplation of the parties to said deed; that
the said restrictive covenant could not have been designed to
refer to such a use as a public city park, and that by its true in-
terpretation in the light of conditions existing at the date of
the deed, it was only intended to prohibit taverns, or wayside
inns, conducted for profit, or houses of amusement or enter-

tainment such as usually accompany such places of resort, and which render their immediate neighborhood unsuitable as places of residence.

The bill further alleges that the said executors had no power to impose such restrictions, and that even if they had such power, yet by the express terms of said covenant it was in no event to be operative unless the same restrictions should be inserted in the deeds to *all the purchasers of any part or parts of the Chestnut Hill estate*, of which the land conveyed to said Grabenhorst was a part, and that in fact said covenant was not inserted in all said deeds, towit, 1st, a deed from said executors to Gottlieb Engel, his heirs and assigns, dated July 6th, 1866, conveying three and one-third acres, part of Chestnut Hill; and 2nd, a deed from said executors to Georgianna Taylor, her heirs and assigns, dated May 9th, 1868, conveying one-half of an acre, part of Chesnut Hill; and that for that reason said covenant was inoperative; and also because the grantors in said deed to Grabenhorst did not covenant in the first conveyance made of any part of said Chestnut Hill estate, nor in all other conveyances thereof that they would exact such covenants from all other purchasers of parts of said tract, and did not covenant with the said Grabenhorst, or any other purchasers of parts of said tract that they, the said grantors held the remaining parts of said tract subject to said restriction, and did not expressly assign to any other purchaser the benefit of the covenant of said Grabenhorst.

The bill further alleges that the said Chestnut Hill tract is no longer rural property, but has been for twenty years past within the city limits, and has to a large extent been cut up into small city building lots upon which are built small frame or brick houses fronting on open streets, and that other streets and avenues in various directions are projected through said tract under ordinances of the Mayor and City Council; in consequence of all which things, said tract is no longer suitable for rural residences, and that it would be unsaleable if its use is restricted by said covenant to that of rural residences, and that the enforcement of said covenant now, even if it were

ever binding and applicable, would be contrary to the prin-
ciples on which Courts of equity deal with such restrictions.

The bill still further alleges that for more than twenty
years continuously an extensive brick yard was operated upon
said Grabenhorst parcel, without objection from any of the
owners of other parts of the Chestnut Hill tract, and con-
tinued in operation until the year 1900, when said establish-
ment was absorbed by the Baltimore Brick Company, and that
such continuous use as a brick yard worked an abandonment
of said restriction; and that the surrounding land which was
not a part of said Chestnut Hill tract was not subject to the
same or any similar covenant, and that for this reason it would
be inequitable to enforce the said covenant against the plaintiff
and so put her said property in competition with other prop-
erty in the immediate locality which is free from said restric-
tion.

The prayer of the bill is that the Court determine whether
the said restrictive covenant is operative at all, and if operative,
the true interpretation thereof so far as the rights of the par-
ties to this suit are concerned; and that the contract of sale
be specifically enforced.

The defendant in its answer admits the plaintiff's title as set
forth by her and the contract of sale as charged; also that the
acreage has been duly verified, but denies the ability of the
plaintiff to convey such a title as the contract requires, be-
cause of the covenant heretofore transcribed from the deed to
Grabenhorst.  It admits the intention was to use the land as
a part of a public park, and that it refused to complete the
contract, only because of its doubt of the right to use the
land as a public park with the right to erect thereon such
buildings and improvements, as in its judgment should be ap-
propriate in a park, and that it does not desire the rescission
of said contract, if upon a construction of said covenant by the
Court, it can be assured of the right to use said land free from
any restriction imposed by said covenant.

The answer neither admits nor denies the power of the ex-
ecutors to impose the said restrictions, leaving that to the

Court.   It avers that the restrictions imposed by the covenant
in the Grabenhorst deed were imposed likewise on all such
parts of the estate of John Gibson, as the executors agreed
they should be imposed upon, and denies that even if not so
imposed, the covenant in the Grabenhorst deed or the deeds
to any other purchaser or purchasers of parts of said Chestnut
Hill, were thereby annulled or rendered inoperative.

It admits the passage of an ordinance of the defendant for
opening Thirty-third street 120 feet in width, to pass through
a part of the Grabenhorst parcel, and that the plans adopted
for other street openings in that locality provide for another
boulevard to be called "Alameda," and to run entirely through
said Grabenhorst parcel.   All other allegations of the plain-
tiff's bill are neither denied nor admitted, but are left to the
proof.

By agreement of counsel, a copy of the advertisement of
the sale of the Chestnut Hill estate by the executors of John
Gibson was considered as put in evidence, from which it ap-
pears that they advertised the Mansion with about 17½ acres
of ground; "also *fifteen* sites for rural residences, portions of
the Chestnut Hill estate,   *   *   *   each from five to ten
acres in extent, and *within* a walk of three to eight minutes of
the York Road Passenger Railway."   Then follows an enu-
meration of *sixteen* parcels of which *fifteen* are described by
name, number three containing only 3¾ acres, while all the
remainder of the fifteen contain from 5½ to 9½ acres each.   No.
16 is described as a lot of 3 acres *bounding on the York
road*.   A copy of the executor's report of sales is also em-
braced in said agreement showing in detail to whom, and for
what sum, each parcel was sold.   Nos. 7, 8, 9 and 13 being
sold to Henry C. Grabenhorst and No. 16 to Gottlieb Engel.
The restrictive covenant hereinbefore set out was inserted in
the deeds for parcels from No. 1 to No. 15 inclusive, but was
not inserted in the deed for No. 16, and all of said deeds *ex-
cept those to Grabenhorst and Engel* contain the following re-
cital: "Whereas it was made a condition of said sale on behalf
of all purchasers at said sale that the building sites then dis-

posed of were designed for rural residences only, and that none but private residences should be erected thereon."

· The deed to Engel was dated July 6th, 1866, and the dates of the several deeds for the parcels from No. 1 to No. 15 ranged from February 3rd, 1866, to October 24th, 1866, which was the date of the deed to Grabenhorst for parcels Nos. 7, 8, 9 and 13. The deed for the one-half acre to Georgianna Taylor was dated May 9th, 1868, the land being part of a larger parcel, part of Chestnut Hill, which John Gibson had in his life time by a written agreement with Charles R. Taylor, duly recorded, agreed to exchange with said Taylor for other lands to be conveyed by said Taylor to said Gibson. The agreement of counsel recited that before the consummation of said agreement of exchange of lots Charles R. Taylor conveyed the lot which he agreed to convey to said Gibson to Mary Taylor, subject to said agreement, who in like manner conveyed the same to Georgianna Taylor, and that after said Gibson's death his executors sold to Georgianna Taylor the half acre described in their deed to her, and that said sale was reported to and ratified by the Orphans' Court for Baltimore County. The deed to Georgianna Taylor referred to the above-mentioned agreement of exchange of lots between John Gibson and Charles R. Taylor, and set forth that part of the consideration of said deed was that said agreement of exchange was thereby declared null and void, and that the parties thereby mutually released the other from all obligations thereunder. The history of that transaction as we have detailed it is necessary for a proper understanding of the defendant's contention that the restrictive covenant was imposed on all such portions of the estate of said Gibson upon which such executors had agreed to impose the same. It was also agreed that in none of the conveyances through which the plaintiff traces title to the land in question, is the covenant in Grabenhorst's deed referred to. Also that the land described in the deed to Grabenhorst is separated from all the other lands sold by the executors of Gibson, by intervening land not subject to this or any similar restriction, and is surrounded

on all sides by other lands not subject to the same or similar restrictions. Also that all the Chestnut Hill estate was brought within the city limits in 1888, by the Annexation Act, and that the sales reported to the Orphans' Court in the copy mentioned included all the Chestnut Hill estate unsold at the death of said John Gibson, except the half acre sold to Georgianna Taylor and subsequently reported; but that this · admission was not to determine the effect upon the title to said half acre, nor the relation of that paragraph of the agree- ment to the sale to Georgianna Taylor. Also that in Sep- tember, 1874, Grabenhorst leased four acres of said parcel of land to John A. Allers for four years from January 1st, 1872, for the purpose of making bricks from clay thereon, with a right to renew for an additional term of five years, and that said Allers failed in 1877, and a new lease on similar terms was made to John Hertel.

It was also agreed that the executors of said Gibson did not assign the benefit of said covenant in the deed to Grabenhorst to all other purchasers from them of parts of said Chestnut Hill estate, unless the form of recital herein before stated to have been inserted in all their deeds except those to Graben- horst and Engel constitute such an assignment. A good deal of testimony was taken. Mr. Sutton, a surveyor and civil engineer, testified that he made the map put in evidence show- ing all this locality, and indicating the various buildings on the respective parcels; and that he had been familiar with it all since 1880; that it was penetrated by streets and alleys on which were numerous frame and brick houses; that Col. Richard M. Johnson for many years, more than twenty, con- ducted on part of this property a large boarding school for boys, known as the Pen Lucy School, and since 1890 known as the Rondewald Sanitarium; that there are also and have been for many years, a number of greenhouses conducted by florists, an extensive brick yard, and establishment for the manufacture of concrete building blocks, all upon the Chestnut Hill property; that Thirty-third street as located and approved runs through the lower part of this parcel in question, and the

projected Alameda avenue runs diagonally through it, and that the property cannot be used for country residences.

Dr. Henry Barton Jacobs testified that Mrs. Jacobs owns a number of lots, part of this Chestnut Hill estate, indicated on the map; that none of these were available for rural residences, that the restrictions if enforced would render her property unsaleable, and that she would prefer to be free from them.

Mr. Augustus D. Clemens, a real estate dealer of experience and the owner of numerous lots, part of this estate, corroborated Mr. Sutton and Dr. Jacobs in every respect and said he would be very glad to be rid of the restrictions on his lots.

Mr. John C. L. Cole, a special assessor for Baltimore City, familiar with this locality since 1870, testified to the same effect in detail, as did also Mr. J. H. Morgan Payne, Chief Assessor of the Appeal Tax Court; the latter saying it would be absolutely impossible to sell a five or ten acre lot there and restrict it to rural residences.

Mr. Henry Hertel, a real estate broker familiar with all this property ever since 1878, testified that his father got possession of the brickyard heretofore mentioned as on the lot in question, in 1878, and that he himself became interested in it with his father in 1880; that they continued to operate it until 1899, when they sold out to the Baltimore Brick Company, which operated it until sometime in 1901, when the clay upon the premises being exhausted, its operation was abandoned, and that it was continuously in operation from 1872 to 1901, a period of twenty-nine years.

He testified that there was never any objection made to its use as a brickyard, though the other owners of parts of Chestnut Hill could not fail to see the clay being dug out, and the smoke and gas from the kilns, where five million of bricks were made each year. The plant included two ten arch kilns, a two-story brick office, a two-story brick stable, a machine shed 150 feet long with an engine house attached to it, and six brick storage sheds from 350 to 450 feet in length. He also testified that there was on the adjoining part of the Grabenhorst tract, during all the period that he was connected

with the brickyard, a large milk dairy conducted by Graben-horst's mother-in-law, with all the necessary buildings for such a business:

We have recited the facts in this case perhaps with unnecessary fullness and detail, but with the purpose of presenting fully the situation as it existed at the time these sales were made, and as it now exists.

The first and fundamental question however, is whether this restrictive covenant in the Grabenhorst deed ever became an operative covenant, for if it did not, there is of course no ground for· resisting the plaintiff's demand for specific performance of the contract of sale.

This covenant is not an *absolute, unqualified* covenant on the part of Grabenhorst for himself, his personal representatives and assigns, not to erect or suffer to be erected on the premises, any other than private residences, and not to erect or suffer to be erected thereon any public house, or house of amusement or entertainment, but it was a *conditional, qualified* covenant, expressly made dependent upon the condition that his grantors should cause the same covenant to be inserted in all other deeds to all other purchasers of the remainder of the Chestnut Hill estate, which the executors in the same clause of that deed *expressly and unqualifiedly* covenanted to do.

It is quite clear that the expression in this deed, "the remainder of the Chestnut Hill estate," meant all of said estate not embraced in that deed; all of said estate sold by said executors, whether previously or subsequently conveyed by them to any purchaser of any part thereof. This is the natural construction of the language used, and it is the construction which equity and fairness would require to be placed on it, where it is clear, as it is here, from all the proof in the case that the restriction was part of a general scheme for the benefit of all the purchasers of a designated tract. That this was the construction the parties themselves placed upon it, is practically demonstrated by the insertion of the same covenant in fifteen out of the seventeen deeds covering all the deeds for

parts of Chestnut Hill.   *Summers* v. *Beeler*, 90 Md. 474.   If the word "remainder" is not to receive this construction, the only other construction it could receive would be; "what remained to be conveyed after the date of that conveyance" which would limit its operation to the one small parcel conveyed subsequently to Mrs. Taylor, and would totally ignore the idea of a general scheme for the benefit of all purchasers of Chestnut Hill.   As was said in the appellee's brief, such a construction would produce this curious result: "no equitable easement would be created by the covenant in any deed in favor of any except the subsequent grantees, and therefore a grantee in a subsequent deed could not complain if a prior grantee made any use of his parcel which the covenant prohibited.   This in itself would destroy the scheme of the restriction, and prevent the grantees from enforcing the restriction among themselves, and consequently the restriction would be a virtual nullity."   *Summers* v. *Beeler*, 90 Md. 480, 481.

This covenant is but a contract in respect to which there is no restraint imposed upon the contracting parties, either by statute or any principle of public policy.   These parties chose to make the covenant in question a conditional covenant, and the condition imposed upon it by them, is a lawful condition. That covenant, with its condition entered into the consideration of his purchase, formed a substantial component part of his consideration, and enures to the benefit of his assigns.

In *Heller* v. *Marine Bank*, 89 Md. 617, the late CHIEF JUSTICE MCSHERRY, in dealing with a question where public policy was invoked to invalidate a contract, cited with emphatic approval the language of SIR GEORGE JESSEL, M. R., in *Printing Co.* v. *Sampson*, L. R. 19 Eq. 465, in which he said: "If there is one thing which, more than another, public policy requires, it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts when entered into freely and voluntarily shall be held sacred and shall be enforced by Courts of justice."   The defendant here has not invoked public policy, but the language cited above is none the less applicable to the facts of this case

and to the necessity of enforcing contracts according to their clear intent.

It is conceded by the defendant that this restrictive covenant was not inserted in the deed to Gottlieb Engel nor in that to Mrs. Taylor and that both these deeds are for parts of Chestnut Hill, but it is contended that there was no obligation upon the executors to insert this covenant in these two deeds.

As to the Engel deed they say the executors advertised that they would sell the mansion with 17½ acres of ground as one parcel; also fifteen sites "for rural residences," within a walk of three to eight minutes from York Road Passenger Railway, all of which were briefly described in the advertisement, and immediately following No. 15 came, as part of the same advertisement, not separated in any manner from the other 15 lots, "No. 16 a lot of three acres bounding on the York road," which is conceded to be a part of Chestnut Hill. The contention is that the executors did not regard No. 16 as intended for a rural residence, and that a lot lying directly on the York road is not embraced within the description of lots from three to eight minutes walk from said road, and that as this deed does not contain the recital contained in all the other deeds for lots 1 to 15, except the Grabenhorst deed, it was not intended to be protected by the restrictive clause. But this contention cannot prevail. No. 16 was as much a site for a rural residence, in fact, as any other part of Chestnut Hill.

It did not cease to be such, because it was not *specifically so designated* in the advertisement, and it was in fact so *classified* in the advertisement. The absence in this deed of the recital mentioned above is robbed of any significance which it might be supposed to have, when it is seen that it is also absent from Grabenhorst's deed, which does embrace the restrictive covenant, and this clearly shows that the advertisement could in no event be permitted to vary the deed or control the construction or operation of a covenant subsequently deliberately inserted in the deed. We cannot hesitate to hold that the omission of the covenant in the Engel deed was a breach of the covenant of the executors in the Grabenhorst

deed, and operated to release and discharge Grabenhorst and his assigns from any obligation of his covenant which was expressly dependent upon the performance of the covenant of said executors.   What we have said of the Engel deed is · equally applicable to the deed to Mrs. Taylor.   The previous agreement between John Gibson and Charles R. Taylor is not material to the question we are considering.   The title did not pass in pursuance of or subject to that agreement.   That was annulled by the concurrence of the executors of Gibson and, of Mr. and Mrs. Taylor.   The title passed under a sale made by said executors (and of a different parcel from that covered by the original agreement) and reported to and ratified by the Orphans' Court.   The land thus conveyed came directly within the scope of the common scheme, and the plain language of the covenant in question, and the omission of the covenant from that deed was as effective a breach of the condition upon which the covenant in the Grabenhorst deed depended, as the omission of the covenant would have been in every one of the deeds for parts of Chestnut Hill.   This being so, the learned Judge of the Circuit Court was correct in decreeing the specific performance of the contract of sale.

The excellent brief of the appellee presented with clearness and force several other interesting grounds for sustaining the decree, but the conclusion we have reached makes it unnecessary to consider them, and we would not be warranted in prolonging this opinion for that purpose.

> *Decree affirmed with costs to the appellee above and below.*