## OTHO L. SUMMERS AND BESSIE F. SUMMERS, HIS WIFE, *vs.* HENRY H. BEELER AND SARAH N. BEELER, HIS WIFE.

*Deeds—Restriction as to Building Line—Right of Purchasers from Common Grantor to Enforce Conditions in Deeds Inter Sese.*

Where the owner of a tract of land divides it into lots and conveys some of them by deeds containing no restriction as to the building line, and then conveys others with restrictions as to the building line, the grantees of the lots with restrictions are not entitled to enforce the same *inter sese*, unless it be shown that the restrictions are part of a general scheme for the benefit of all the purchasers.

The owner of a tract of land in a city laid it out into lots and recorded a map thereof among the land records.    In the subsequent conveyances, certain restrictions as to the building line were inserted in some of the deeds, while in other deeds there were no restrictions. There was nothing in the recorded map showing any restriction. Plaintiff's lot was conveyed to him by a deed containing a restriction as to the building line but no servitude was therein imposed on the land retained by the grantor, which included defendant's lot.    A similar restriction was contained in defendant's deed of the adjoining lot subsequently executed.  Plaintiff filed a bill to restrain defendant from building a bay-window beyond the line mentioned.    *Held,* that since the restrictions in the deeds were not made in pursuance of a general scheme for the improvement of the property, and were not imposed upon all the purchasers, the plaintiff was not entitled to enforce the restriction in the deed to the defendant, to which he was not a party, and which was not made for the benefit of his lot.

Appeal from the Circuit Court for Washington County (STAKE, J.)

The restriction in the original deeds of both plaintiff's and defendant's lots is as follows: " Provided, however, that if the said" grantee, " his heirs, devisees or assigns, shall construct or cause to be constructed upon the lot of ground hereby conveyed any dwelling-house or building or other improvements, such dwelling-house, building or other improvement shall not be located, built or constructed upon said lot closer to the west marginal line of the lot hereby conveyed than a line running parallel thereto and bounding the west wall of the house owned by C. P. Mason and W. M. Keedy upon lot 5 on said plat."

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*A. A. Doub* (with whom were *Daniel W. Doub* and *Frank B. Bomberger* on the brief), for the appellant.

The condition in the deed of Mrs. Beeler, and of all the lots from 6 to 13 inclusive, is an encumbrance upon the title. *Halle* v. *Newbold,* 69 Md. 265 ; *Kramer* v. *Carter,* 136 Mass. 504 ; *In re Higgins Hitchman's Contract,* 51 Law Journal Ch. Div. 772; *Columbia College Trustees* v. *Lynch,* 70

N. Y. 449 ; *Peck* v. *Conway*, 119 Mass. 546 ; *Hamlin* v. *Werner*, 114 Mass. 397.    The restrictions are enforceable in favor of the other lots.    *Sanborn* v. *Rice*, 129 Mass. 396. And the plaintiff is entitled to enforce the condition in the deed of defendant's adjoining lot.    *Clark* v. *Martin*, 49 Pa. St. 289 ; *Halle* v. *Newbold*, 69 Md. 265 ; *Columbia College* v. *Lynch*, 70 N. Y. 449.

The mere fact that the original deed of plaintiff's lot is prior in date to the original deed of defendant's lot does not deprive plaintiff of the right to enforce the condition in defendant's deed.    *Talmage* v. *East River Bank*, 26 N. Y. 105 ; *Beale* v. *Case*, 138 Mass. 140 ; *Brick Co.* v. *Butler*, 15 Q. B. D. 261, 16 Q. B. D. 778 ; *Barker* v. *Nightingale*, 6 Allen, 341 ; *DeGray* v. *Monmouth Beach Club House*, 50 N. J. Eq. 329 ; *Mulligan* v. *Jordan*, 50 N. J. Eq. 363.

The building of a bay-window by the defendant is a violation of the restriction in her deed.    *Peck* v. *Conway*, 119 Mass. 546 ; *Bagnall* v. *Davies*, 140 Mass. 76 ; *Hamin* v. *Warner*, 144 Mass. 397.

*A. C. Strite*, for the appellees.

PEARCE, J., delivered the opinion of the Court.

This is a bill in equity filed by the appellants to restrain the appellees from erecting upon their own premises, adjoining those of the appellants, a bay-window, in violation, as the appellants claim, of restrictions contained in conveyances for their respective premises from a common vendor, to whom their titles are traced through mesne conveyances. A preliminary injunction was granted, and was dissolved upon hearing, and thereupon this appeal was taken.

Rev. C. L. Keedy, being the owner of a tract of land in Hagerstown, on the east side of Mulberry street, laid out the tract into twenty-eight lots, fourteen of which fronted on Mulberry street, and fourteen extended back eastward, fronting on King street, as shown in the accompanying plat, which was recorded among the Land Records of Washing-

*EAST ANTIETAM STREET.*

| 140 ft. | | 140 ft. | |
|---|---|---|---|
| 49 ft. | No. 1 — No restriction. | No. 28 | 49 ft. |
| 41 ft. | 2 — No restriction. | 27 | 41 ft. |
| 41 ft. | 3 | 26 | 41 ft. |
| | No restriction. | | |
| 41 ft. | 4 — Restriction to building line of 3 and 5. | 25 | 41 ft. |
| 41 ft. | 5 — No restriction.  1st house built. | 24 | 41 ft. |
| 41 ft. | 6 — Restriction. | 23 | 41 ft. |
| 41 ft. | 7 — Restriction to line of house already built. | 22 | 41 ft. |
| 41 ft. | 8 — Restriction. 2nd house built. Bay window. | 21 | 41 ft. |
| 41 ft. | 9 — Restriction. | 20 | 41 ft. |
| 41 ft. | 10 — Restriction to west wall of house on No. 5. | 19 | 41 ft. |
| 41 ft. | 11 — Restriction.  Plaintiff's lot. | 18 | 41 ft. |
| 41 ft. | 12 — Restriction. | 17 | 41 ft. |
| 41 ft. | 13 — Restriction. | 16 | 41 ft. |
| 49 ft. | 14 — No restriction.  Porch extending beyond line. | 15 | 46 ft. |
| | 140 ft. | 140 ft. | |

*SOUTH MULBERRY STREET.*   *ALLEY, 10 ft.*   *KING STREET.*

*EAST BALTIMORE STREET.*

ton County, but without anything thereon, or in the de-
scription of the lots which accompanied the plat, to indicate
any restrictions upon the use of the lots or any of them. In
the subsequent sale and conveyance of these lots fronting
on Mulberry street, certain restrictions as to the building
line to be observed were inserted in some of the deeds, while
in others there were no restrictions whatever. Lots 1, 2,
14, 3 and 5 were the first sold, and in the order named,
without any restriction as to their use. These conveyances
were all made between June 28th, 1888, and November
23rd, 1888.

Lot 5 was conveyed to C. P. Mason and W. M. Keedy,
and the first house built upon any of the lots was erected
here in the spring of 1889 standing back eight feet from the
east line of Mulberry street. On No. 1, a church has
been built with a covered vestibule, extending beyond the
eight-foot line. On No. 2, three dwellings have been built,
each with a two-story bay-window, extending beyond the
eight-foot line. On lots 7, 10 and 14, houses have been
built, each with a one-story front porch extending beyond
the line. On lot 8, a house was erected in 1889, the front
wall of which is on the eight-foot line, with an enclosed
porch, making it a one-story bay-window, extending beyond
the line. All the other houses on the Mulberry street lots
have steps extending beyond the eight-foot line. All these
lots, except 1, 2, 14, 3 and 5 were sold and conveyed with
substantially the same restriction as to building, that is,
"that no building or other improvement shall be located,
built or constructed upon said lot closer to the west margi-
nal line thereof, than a line running parallel thereto and
bounding the west wall of the house owned by C. P. Mason
and Wm. M. Keedy upon lot No. 5."

No. 11 is owned by Mrs. Summers, one of the appellants,
and No. 10, by Mrs. Beeler, one of the appellees, who is
now building a house thereon with a bay-window, extend-
ing three feet beyond the line of the Mason and Keedy
house on No. 5, to which she is limited by the original con-

veyance of her lot No. 10, and the appellants are seeking
to restrain the erection of this bay-window.   Lot 11 was
originally conveyed to the Danzer Lumber Co. by deed
dated *January 2nd, 1890,* containing the restriction above
mentioned, and the title thereto has passed to Mrs. Summers
by mesne conveyances, each of which refers to the restric-
tion in the original deed.   Lot 10 was originally conveyed
to Norman B. Scott by deed dated *Dec. 16th, 1890,* with
the same restriction, and the title thereto has in like manner
passed by mesne conveyances to Mrs. Beeler, each convey-
ance referring to the original restriction.

In *Halle* v. *Newbold,* 69 Md. 270, this Court, reviewing the
cases of *Thurston* v. *Mincke,* 32 Md. 487 ;   *Whitney* v. *Union
R. R.,* 11 Gray, 359, and *Clark* v. *Martin,* 49 Pa.  St.  289,
says :   " These cases conclusively settle the law that a grantor
may impose a restriction in the nature of a servitude or
easement upon the land that he sells or leases, for the
benefit of the land that he still retains ; and if that servitude
is imposed upon the heirs and assigns of the grantee, and
in favor of the heirs and assigns of the grantor, it may be
enforced by the assignee of the grantor, against the assignee
(with notice) of the grantee."   The Court observed that in
each of the cases reviewed, the grantor imposed the servi-
tude upon the land he sold, in favor of the land he retained,
while in the case then before the Court, the grantors imposed
the condition upon the land they retained, in favor of the
land they sold, but the Court said " the principle in both
cases is the same."

But the case now before us does not fall within either class
of cases mentioned.   Mr. Keedy sold and conveyed the
plaintiffs' lot No. 11, January 2nd, 1890 ; he had then sold
and conveyed eight lots, Nos. 1, 2, 14, 3, 5, 9, 8 and 6, the
first five without restriction, and the last three with the re-
striction mentioned, and he imposed upon the grantee of lot
11 the same restriction, but he imposed no servitude upon
the land he retained, which embraced lot 10, in favor of the
land he then sold, lot No. 11.

He sold and conveyed the defendant's lot No. 10, Dec. 16th, 1890, and he imposed the same restriction upon that lot which he had imposed upon lot 11. But this restriction cannot enure to *his* benefit as respects lot 11, upon the principle stated in 69th Md., because he had sold lot 11 nearly a year before; nor can it enure to the benefit of the plaintiff upon that principle as owner of lot 11, because there is no privity either of contract or estate, between the plaintiff and the defendant.

In *Mulligan* v. *Jordan*, 50 N. J. Eq. 363 (24 Atl. R. 543), it was held that a purchaser of a lot whose deed contains a covenant against the erection of any building within a certain distance of the curb line, cannot maintain an action against a subsequent purchaser of an adjacent lot from her grantor, for violation of a like covenant, when there was no such covenant between the two purchasers; and their grantor, although he required similar covenants from all purchasers, did not covenant with the first that he would exact them from subsequent purchasers. The Chancery Court of New Jersey is a Court of high repute, and has dealt with numerous questions of this character, and the facts of the case cited above are so closely analogous to the facts of this case that we cannot do better than adopt the following language from that opinion.

" The complainant's deed is prior to that of the defendant. There is no covenant to the complainant from Mr. Roberts, the grantor, that he holds the remainder of the property subject to the same restrictions, or that he will exact similar covenants from purchasers of the remaining property; nor is the complainant the express assign of defendant's covenant with Mr. Roberts; nor is there any covenant between the plaintiff and the defendant. The right of an owner of a lot to enforce a covenant (to which he is not a party or an assign), restrictive of the use of other lands, is dependent on the covenant having been made for the benefit of his lot. Obviously, while a subsequent purchaser might, by the operation of this rule, acquire a right of action against a

prior purchaser, the prior purchaser would acquire no rights from a covenant entered into by a subsequent purchaser, unless there exists some *condition* which will entitle him to the benefit of such covenant."

The *condition* above mentioned has its illustration in another class of cases in which grantees from a common grantor, whose deeds contain restrictive covenants, conditions or reservations, have been allowed to enforce them *inter sese*, that is, cases, " where although the covenant or agreement in the deed, regarded as a contract merely, is binding only on the original parties, yet in order to carry out the plain intent of the parties, it will be construed as creating a right or interest, in the nature of an easement appurtenant to the remaining land of the grantor at the time of the grant, and the right and burden thus created, will respectively pass to, and be binding on, all subsequent grantees of the respective lots of land." *Whitney* v. *Union R. R. Co.*, 11 Gray, 365, quoted and approved in 69 Md. 270. But, as is well expressed in *Mulligan* v. *Jordan, supra*, " the right of grantees from a common grantor to enforce *inter sese* covenants entered into by each with said grantor, is confined to cases where there is proof of a general plan or scheme for the improvement of property, and its consequent benefit, and the covenant has been entered into as part of a general plan to be exacted from all purchasers, and to be for the benefit of each purchaser, and the party has bought with reference to such general plan or scheme, *and the covenant has entered into the consideration of his purchase.*"  In that case the Court proceeded to say " the only fact which appears, is, that the same covenant is incorporated in the deeds of the complainant and defendant, and that Mr. Roberts has inserted the same covenant in each deed he made conveying any portion of the property.   This has been held not sufficient evidence of the covenant having been entered into for the benefit of other lands conveyed by the same grantor," citing in support of this position *Jewell* v. *Lee*, 14 Allen, 145 ; *Sharp* v. *Ropes*, 110 Mass. 381 ; *Keates* v. *Lyon*, 4

Ch. App.· 218 ; *Renals* v. *Cowlishaw,* 11 Ch. Div. 866. In the present case, the facts are not nearly so strong as in *Mulligan* v. *Jordan,* because here Mr. Keedy conveyed five of the fourteen lots sold without any restrictions whatever.

In *Nottingham Brick and Tile Co.* v. *Butler,* 15 Q. B. Div. 268, JUSTICE WILLS says : "The principle which appears to me deducible from the cases, is, that where the same vendor, selling to several persons, plots of land, parts of a larger property, exacts from each of them covenants imposing restrictions upon the use of the plots sold, without putting himself under any corresponding obligation, *it is a question of fact* whether the restrictions are merely matters ·of agreement.between the vendor himsélf and his vendees, imposed for his own benefit and protection, or are meant by him, and are understood by the buyers, to be for the common advantage of the several purchasers. If the restrictive covenants are simply for the benefit of the vendor, purchasers of other plots of land from the vendor cannot claim to take advantage of them. If they are meant for the common advantage of a set of purchasers, such purchasers and their assigns may enforce them *inter sese* for their own benefit." That case was a sale of a parcel of land in 1865 in 13 lots to different purchasers with covenant by each restricting the use of .the land as a brick-yard. Defendant subsequently bought lot 11, but his deed contained no restriction. In 1882 plaintiff contracted to purchase lot 11, and paid a deposit, but on discovering the restrictive covenant, claimed to rescind the contract and sued for the deposit, and it was held that if the contract were executed, he would be bound by the restrictive covenants ; that the owners of the other twelve lots could enforce them against him and each other, and that he was entitled to rescind and recover the deposit. On appeal LORD ESHER, M. R., said JUSTICE WILLS was perfectly correct, and that "the question whether it is intended each of the purchasers shall be liable, in respect of those restrictive covenants to each of the other purchasers, is a question of fact to be determined

by the intention of the vendor and of the purchasers, and
that question must be determined upon the same rules of
evidence as any other question of intention." In that case
the property was put up at auction in 1865 in thirteen lots,
and one of the publicly announced conditions of sale was
that no lot should be used as a brick-yard. At that time
lots 1 and 2 were sold. In February, 1866, there was a
second auction, at which lots 6, 7 and 8 were sold, and in
October, 1867, there was a third auction at which lots 9
and 10 were sold, and the evidence showed that all these
were sold on the same terms. Lots 3, 4 and 5 were sold
respectively in 1865, 1866 and 1867 at private sale, but
there was no direct evidence as to the terms on which they
were sold, the deeds for these not being produced. Lot 11
was sold at private sale September 4th, 1866, and the deed
contained the restrictions mentioned at the auction. Lot
13 was sold at private sale in June, 1866, with the same re-
strictions. These restrictions, among other things, required
that all buildings erected should be of a uniform stone
color, with slate roofs, and should cost not less that £400
each, and the proof was that every house built conformed
to these conditions. Upon this state of proof the Court
could reach no other logical or rational conclusion than
that the vendor intended, and the purchasers understood,
that the covenants should enure to the benefit of every pur-
chaser, and that they entered into the consideration of
every purchase. But in the case before us, though Mr.
Keedy took the pains to record before sale a plat of the
land and a description of the lots, he nowhere mentioned
any restrictions or conditions as to their use. There was
no auction sale at which such restrictions or conditions
were made known to the public, nor was such announce-
ment made in any other manner. Not only so, but the five
lots first sold were sold without any restrictions—and the
purchasers of all the other 11 lots on Mulberry street
(which were sold with restrictions) except Mrs. Summers',
have treated these restrictions as not made for the common

benefit of all these purchasers, both by their own violation of these restrictions, and by their failure to resist similar violations by the other purchasers. We think, therefore, the conduct both of the vendor and of the purchasers forbids the conclusion that their intent and understanding was that these restrictions were part of a general plan or scheme for the benefit of all the purchasers.

The cases chiefly relied on by the appellant do not sustain his contention in this case. Thus in *Talmage* v. *East River Bank*, 26 N. Y. 105, a plat was filed and recorded showing that every house to be built was to be set back eight feet from the street. In *Trustees of Columbia College* v. *Lynch*, 70 N. Y. 449, an agreement showing restrictions as to all the lots was recorded, and the defendant's purchase was made with express reference and subject to this agreement. It was strenuously contended that the case of *Clark* v. *Martin*, 49 Pa. St. 289, repudiated the necessity of a general plan in cases like the present, and having been approved by this Court in 32 and 69 Md. sustained the appellant's contention. But we do not so understand that case. The language used by the Court, and relied on here by the appellant, is as follows : '' It was objected at the argument that this remedy applies only as a means of compelling an observance of the terms involved in a general plan of lots, and this element actually exists in about half of the cases just cited ; yet they are not decided on that consideration. It is not because a plan is deranged that the Court interferes, but because rights are invaded, or about to be ; and this fact may exist in a plan of two lots as well as in one of two hundred. The plan often furnishes the proof of the terms on which sales were made, but the fact of the alleged terms is as effective when proved by a single deed as when proved by a plan.'' It is manifest from this language that the Pennsylvania Court is in full accord with the English Chancery Court in holding that the question is one of fact to be determined by the intention of the vendor and of the purchasers, and that it is to be determined upon the same

rules of evidence as other questions of intentions. In the Pennsylvania case there were but two lots under consideration, and the intention of the parties was as clearly shown by the one deed imposing restrictions upon one lot for the benefit of the other, retained by the vendor, as it could have been by a plan describing the two lots, and detailing the conditions to be imposed on one for the benefit of the other.

The case of *Sharp* v. *Ropes*, 110 Mass. 381, is more closely analogous to the present case than any to which we have been referred. Heath laid out a parcel of land in eleven lots, five of which fronted on the north side of Gordon street and one on the south side of the same street. A plat was recorded showing the area and description of each lot, but making no reference to any restrictions upon their use. Three of the five lots on the north side of the street were conveyed by Heath, subject to the condition that no house should be built thereon within 20 feet of Gordon street. The other two lots on the north side and the one lot on the south side were conveyed without any restrictions. The plaintiff's deed was prior in point of time to defendant's deed, and both were subject to the restriction mentioned. Defendant began the erection of a house within 20 feet of the street, and plaintiff applied for an injunction, which was refused, the Court saying : " There is nothing from which we can infer that the restriction in defendant's deed was intended for the benefit of the estate now owed by the plaintiff. No such purpose can be gathered from the plan. Neither of the deeds under which these parties respectively claim purports to give to the grantee any such right against any other grantee. The burden of proof is upon the plaintiff if she insists upon giving to that condition any wider application, and that burden we do not find she has sustained." A very elaborate and able review of all the leading American and English cases on this subject will be found in *DeGray* v. *Monmouth Beach Club House*, 50 N. J. Eq. 329 (24 At.

Rep. 388), fully sustaining the conclusions of the learned Judge of the Circuit Court.

For the reasons stated the decree of the Circuit Court is affirmed with costs to the appellee in both Courts.

*Decree affirmed.*

(Decided December 9th, 1899).