# SAMUEL R. BOYD

*vs.*

# THE PARK REALTY CORPORATION.

*Building Restrictions—Who May Enforce—Effect of Mortgage Foreclosure.*

One who purchases property which is subject to a mortgage cannot place restrictions thereon which will be binding on the mortgagee, unless the latter consent or unless he is in some way estopped from questioning them.                                    p. 39

The owner of a tract who, after selling lots therein, subject to restrictions, is divested of the balance of the tract by a foreclosure sale, has no standing in a court of equity to enforce the restrictions.                                    pp. 39, 40

That a company, having laid out its land into lots, streets, and avenues, subsequently selling individual lots, covenanted in the deeds to the purchasers to pave the streets binding on the property conveyed, to supply water and sewer drainage, "and that said improvements so to be made by it * * * shall constitute and be a part of the general system of street construction and improvements now being made and supplied said property," tends to show that building restrictions contained in such deeds were part of a general plan of improvement.                                    pp. 41, 42

A tract of land subject to a mortgage having been platted by the owner company into lots, and some of the lots sold and conveyed by it subject to building restrictions which formed part of a general plan of improvement, the mortgage being at the same time released as to those particular lots, *held* that a sale of the balance of the lots on foreclosure of the mortgage put an end to the binding effect of the restrictions, conceding that previously they could have been enforced by the purchasers of lots *inter sese*.                                    pp. 42-44

That the vendor's title is free from any reasonable doubt is sufficient to justify a decree for specific performance in his favor.                                    p. 44

On an affirmance by the Court of Appeals of a judgment for specific performance in favor of the vendor, based on the invalidity of certain building restrictions, *held* that, under the circumstances, each party should pay one-half the costs in that Court, the appellant to pay the costs below.          p. 45

*Decided June 18th, 1920.*

Appeal from the Circuit Court of Baltimore City (STANTON, J.).

The cause was submitted on briefs to BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*E. Donovan Hans,* for the appellant.

*C. Alex. Fairbank, Jr.,* for the appellee.

BOYD, J., delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of Baltimore City requiring the appellant to specifically perform a contract, dated November 15, 1919, made by him to purchase from the appellee lots Nos. 1, 2, 3, 4, 5 and 6 in Block 20, as shown on a plat of the property of the Forest Park Highlands Company of Baltimore City, which property is at the corner formed by the intersection of the northeast side of Bonner Road and the southeast side of Oakfield Road. The property was agreed to be sold free of all encumbrances, and the title was to be good and marketable. The appellant refused to comply with the contract on the ground that the lots were subject to certain restrictions which would lessen their value.

There is some confusion in the record, but our understanding is that this was originally a part of the Slingluff property, which was purchased by Abbott Morris from the trustees of that estate. Morris executed a mortgage to the trus-

tees for $82,500 simultaneously with the deed to him. Afterwards he sold the property, subject to the mortgage, to the Forest Park Highlands Company, which laid it out into lots, streets and avenues, and placed the plat on record. That company conveyed the lots involved in this case to Charles A. Thumel and Frank Harrigan (who sold them to the appellee), and also sold a number of other lots to various purchasers. All of the deeds made by that company contained the same restrictions that are in the Thumel-Harrigan deed. The mortgage given by Morris was later foreclosed, and the part of the property held by the Forest Park Highlands Company was sold under the foreclosure proceedings, except such as had been sold and released from the mortgage prior thereto. No portion of the property disposed of under those proceedings was sold subject to the restrictions. Without setting them out, it is sufficient to say that the restrictions in the Thumel deed applied to the kind and cost of buildings, where to be erected, the outbuildings, fences, etc., on the lots. They are set out in full in the Thumel deed and immediately following them is this provision: "It is agreed that all the foregoing covenants and agreements shall run with and bind on the property hereby conveyed but shall not continue for a period longer than twenty-one years." The only covenant of the company in the deed (excepting one of special warranty and another for further assurances) is as follows:

> "The Forest Park Highlands Company of Baltimore City on its part covenants and agrees with the parties of the second part, their heirs and assigns, that it will macadamize the streets binding on the property herein described, lay granolithic sidewalks and cause to be introduced in the streets for the accommodation of said lot and the buildings to be erected thereon water and supply sewer drainage for said property, and that said improvements so to be made by the party of the first part shall constitute and be a part of the general system of street construction and improvements now being made and supplied said property."

There can be no doubt that the property sold in the fore-closure proceedings cannot be made subject to the restrictions in the deeds made by the Forest Park Company before those proceedings, and none with restrictions have been made since. That company, which purchased subject to the mortgage, could not place restrictions on the property which would be binding on the mortgagees without their consent or unless they were in some way estopped from questioning them. The purchasers of all of the lots took their titles subject to the mortgage, except when released as to their respective lots. If the holder of a property, which was subject to a mortgage when he bought it, could burden it with restrictions without the consent of the mortgagees, the security of the mortgage might be seriously jeopardized, and it seems to be beyond controversy that, in the absence of something being done by these mortgagees to estop them, they could sell all of the property not released by them if necessary to pay the mortgage debt, without regard to restrictions placed on the lots by others after the mortgage was given.

The record does not show how many lots were sold prior to the foreclosure, or give a definite idea as to the proportion of them to those unsold, but it is said in the appellee's brief, and not denied by the appellant, that the largest portion of the tract which was owned by the Forest Park Company was sold under the foreclosure proceedings. While it is clear that none of the lots or property then sold are subject to the re-strictions, the important question is whether the purchasers of those bought before the foreclosure have the right to en-force the restrictions *inter sese.* The Forest Park Highlands Company cannot enforce them for the obvious reason that it no longer has any interest in the property. What was said by JUDGE BURKE, in speaking for the court in *Foreman* v. *Sadler's Executors,* 114 Md. 574, 579, in reference to the Lyndhurst Company, is very applicable here. That com-pany, after giving a purchase money mortgage, conveyed parts of the property subject to restrictions, and the mort-

gage was afterwards foreclosed. In speaking of the restriction then before the Court it was said: "That restriction was evidently inserted for the benefit of the Lyndhurst Company, and all its property having been sold it has now no standing in a court of equity to enforce the restriction." The court also quoted from *Sellman* v. *Sellman,* 63 Md. 520, that "it is a fundamental principle of equity pleading that to entitle a party to sustain a bill he must show an interest in the subject of the suit, or a right to the thing demanded, and proper title to institute the suit concerning it."

But we still have to consider the rights of the purchasers of lots from the Forest Park Company, bought before the foreclosure. It is true that they knew, or are charged with knowledge, of the mortgage, but the mortgagees released it from their respective lots, and both of those facts are to be remembered in passing on the question. Some principles in regard to such restrictions have been definitely determined and settled, but there are so many cases, and the facts vary so, that it is sometimes difficult to distinguish the effect of one decision from that of another. In *Summers* v. *Beeler,* 90 Md. 474, JUDGE PEARCE, with his well-known ability and industry, reviewed many cases, and he then quoted with approval from *Nottingham Brick and Tile Co.* v. *Butler,* 15 Q. B. Div. 268, where JUSTICE WILLS said: "The principle which appears to me deducible from the cases is, that where the same vendor, selling to several persons plots of land, parts of a larger property, exacts from each of them covenants imposing restrictions upon the use of the plots sold, without putting himself under any corresponding obligation, it is a question of fact whether the restrictions are merely matters of agreement between the vendor himself and his vendees, imposed for his own benefit and protection, or are meant by him, and are understood by the buyers, to be for the common advantage of the several purchasers. If the respective covenants are simply for the benefit of the vendor, purchasers of other plots of land from the vendor cannot claim to take

advantage of them. If they are meant for the common advantage of a set of purchasers, such purchasers and their assigns may enforce them *inter sese* for their own benefit."

That was approved on appeal, and was again quoted by us as late as *Ringgold* v. *Denhart,* 136 Md. 136.

In this case the Forest Park Company did not covenant to impose similar restrictions on all properties sold by it, or that its remaining land should be subject to them. In *Summers* v. *Beeler,* JUDGE PEARCE quoted from *Mulligan* v. *Jordan,* 50 N. J. Eq. 363, where it was said that the same covenant being in each deed the owner made "has been held not sufficient evidence of the covenant having been entered into for the benefit of other lands conveyed by the same grantor." He had just quoted from that case that, "the right of grantees from a common grantor to enforce *inter sese* covenants entered into by each with said grantor is confined to cases where there is proof of a general plan or scheme for the improvement of property, and its consequent benefit, and the covenant has been entered into as part of a general plan to be exacted from all purchasers, and to be for the benefit of each purchaser, and the party has bought with reference to such general plan or scheme, *and the covenant has entered into the consideration of his purchase."* The last clause, which is italicized in *Summers* v. *Beeler,* seems to have been provided for in the Thumel deed, as the habendum contains this provision: "subject however to the following covenants and agreements which are hereby entered into by the parties of the second part as a part of the consideration for this deed." The restrictions are then set out.

The covenant made by the Forest Park Company in reference to the streets, sidewalks, water and drainage, quoted above, supports the theory that there was a general plan or scheme for the improvement of this property. The appellee argues that it shows the contrary, because the covenant is only as to the streets binding on the property described in the particular deed, but it concluded by saying: "and that said

improvements so to be made by the party of the first part shall constitute and be a part of the general system of street construction and improvements now being made and supplied said property." It could not have been intended to mean that the streets were to be mere patchwork, improved in front of one lot and then in front of another some distance away. The water and sewers certainly could not have been furnished in that way. The plat was regularly recorded and, without discussing this branch of the case further, we are not prepared to definitely hold that there was not sufficient evidence of a general scheme or plan of improvement which would have enabled the purchasers to enforce *inter sese* the restrictions, had it not been for the mortgage and its foreclosure, and will assume that to be so.

Here again the record is somewhat deficient. The plat could have been marked, so as to show what lots had been sold, or what were left, with very little trouble, or a list could have been filed showing those sold or unsold, adopting whichever was the shorter, and stating that the rest were sold or unsold, as the case might be. But as the contrary is not suggested, and from a glance at the plat there being perhaps three hundred or more lots on it, there are probably a number of instances where there are one or more lots which were sold by the Forest Park Company before the foreclosure, and there are others immediately adjoining, which were sold under the foreclosure sale. The result is that a lot purchased before the sale would be subject to the restrictions, under our assumption above, and one immediately adjoining not so purchased would not be. It would be a great injustice to the owners of the lots purchased before the foreclosure, if they are to be subject to the restrictions, while other lots adjoining them, or in the immediate neighborhood and a part of the general plan, are not to be. The appellee would be prevented from putting up a block of houses, but an owner of lots near him who did not buy from the Forest Park Company, but under the foreclosure sale, would not be. It would

effectually destroy the scheme intended, would in many if not most cases be no protection to those who entered into such covenants, and necessarily put their properties at a great disadvantage.

Every purchaser from the Forest Park Company had notice, either actual or constructive, of the mortgage, and is presumed to have purchased with the knowledge and understanding that any such agreement as they entered into in their deeds in reference to the plan or scheme of improvement was liable to be rendered inoperative and unavailing, in case of a default in the mortgage resulting in a foreclosure. They might possibly have protected themselves by getting the mortgagees to enter into the arrangement, and if they had refused to do so, the purchasers could have declined to purchase lots with such restrictions on them. While it cannot be said that our decisions have heretofore definitely settled this question, they have gone very far in that direction. We have already referred to *Foreman* v. *Sadler's Executors* and shown what was the effect of the foreclosure there. In *Sullens* v. *Finney,* 123 Md. 653, JUDGE URNER, in speaking for the Court, assumed that the evidence sufficiently showed the existence of a general plan for the improvement of the land, but held that the appellee's title was nevertheless superior to the operation of the restrictive covenants by which it was supposed to be affected. The appellee held a mortgage on the property before it was laid out into lots, and purchased the property not sold by the mortgagor at a foreclosure sale. It was said: "His rights as mortgagee were of record, and notice of their existence and extent must be imputed to every subsequent purchaser * * *. There is nothing in the record to suggest the idea that any of the purchasers of lots were in fact led by any conduct on the part of the appellee to believe that he was thereby subordinating to their interests the estate secured by his mortgage. It was doubtless supposed by all parties concerned that the covenant for the payment of the mortgage debt would be performed. But those who may have

purchased lots with the expectation that the restrictive cove-
nants contained in their deeds would be extended to the
entire development must be, presumed to have contracted with
reference to the possibility of a default and foreclosure under
the existing mortgage."

Seventy-nine lots had been sold and released from the
mortgage prior to the foreclosure, and in the deeds for sixty-
nine of them there were uniform covenants and agreements
that they could only be used for residence purposes, and as
therein stated. In each of these deeds it was provided that
those covenants and agreements should run with and bind the
lots until January 1, 1930. In the deeds for the remaining
ten lots included in the seventy-nine, there were two in which
the only conditions imposed were against the sale of liquor,
three in which the deeds contained covenants similar to the
sixty-nine except as to the cost of the buildings, and there
was a deed for five lots without restrictions. That case re-
flects very materially on the one now before us and much
that is said is applicable. See also *Baltimore City* v. *Gar-
rett*, 108 Md. 24.

But without further prolonging this opinion we are con-
vinced that the foreclosure sale put an end to the binding
effect of the restrictions, if we concede they could before that
have been enforced by the purchasers *inter sese*, and that a
court of equity clearly would not be justified in enforcing
such restrictions under the circumstances of this case. The
title offered the appellant is in our judgment free from any
reasonable doubt on the subject, which is sufficient. *Ham-
mer* v. *Westphal*, 120 Md. 15, 19. The solicitor for the
appellee called the court's attention to what appears in the
deed in the record, that the covenants and agreements were
only to run for a period of twenty-one years, and then re-
ferred to the date of the deed as August 20, 1900. That is
the date in the body of the deed as printed in the record, but
it is evidently an error, as the acknowledgment was not until
August 20, 1909, the deed was recorded August 21, 1909,

and the bill of complaint alleges that it was dated August 20, 1909. There is, therefore, still about ten years before that time will expire, but in our opinion the restrictions are no longer capable of being enforced, and hence that is immaterial. It follows from what we have said that the decree must be affirmed, but under the circumstances we deem it proper that each party pay one-half of the costs in this court.

> *Decree affirmed, each side to pay one-half of the costs in this Court, including the transcript, the appellant to pay the costs below.*