# CIRCUIT COURT OF BALTIMORE CITY.

Filed May 12, 1923.

## THE DUNDALK COMPANY
## VS.
## ERNEST T. NEWELL AND WIFE.

*Jesse N. Bowen* for plaintiff.
*Robert Biggs* for defendant.

DUFFY, J.—

This suit was instituted by the complainant to restrain the infringement of restrictions placed on land in a scheme of development. It owned about 1,000 acres of land in Baltimore county on or near the city line. This land was undeveloped and is remote from the

thickly improved part of the city nearest to it. On a small part of it a village known as Dundalk has been constructed, consisting of 500 houses. The complainant sold to the United Shipping Board Emergency Fleet Corporation 23.6 acres, on which the latter corporation erected 296 houses, known as St. Helena. The tracks of the Sparrows Point branch of the United Railways runs between these two villages. The complainant still owns nearly all of the land, including Dundalk, not conveyed to the Fleet Corporation, and some of this land is on the St. Helena side of the railway, and none of the complainant's property is subject to the restrictions hereafter mentioned, nor did the complainant covenant to make any of its land subject to these restrictions. The defendants, Newell and wife, bought a lot 120 feet by 131 feet, unimproved, a part of the land in the restricted area conveyed to the Fleet Corporation. It will thus be seen that this controversy is between the original dominant owner and an assignee of the servient owner; that the equitable servitudes are not mutual, but all on one side; that when the defendants committed the alleged infringement it was not done under the growing encroachment of business on a restricted residential district. On a part of the lot the defendants have erected seven stores, fronting on the building line of Willow Spring road and running back 41.9 feet to an open space 9.5 feet wide, beyond which are sheds running back 10.15 feet. Each store consists of the main building, yard and shed. Each is one-story, with a loft over the rear part of the main building. In each the first floor is on about the level of the sidewalk, is cemented, and consists of one room without interior partitions. The buildings are suitable for shops and are not adapted to dwelling purposes.

On July 13, 1918, a deed was executed by the Dundalk Company as grantor and the Fleet Corporation as grantee by which a tract of land was conveyed subject to certain restrictions. The *habendum* recites that the restrictive covenants are entered into by the grantor and grantee and their respective successors and assigns. The first third and seventh restrictions are as follows:

First. That no factory saloon or business house of any kind shall be erected or maintained on the land hereby conveyed but said land shall be occupied and used for residence purposes only and not otherwise; provided, that nothing herein contained shall prohibit the erection on said land of kitchens and mess halls, bakeries, power houses and other buildings for use in connection with or appurtenenant to houses which may be erected on said land for residential purposes by the said party of the second part.

Third. That no part of any building erected or kept on said land, except steps and porches, shall be within fifteen (15) feet of any of the following streets, shown on said plats, that is to say, Baltimore avenue, Patapsco avenue, St. Helena avenue, Colgate avenue, Willow Spring avenue, and the street shown on said lot as lying west of and immediately adjoining the right-of-way of the United Railways and Electric Company.

Seventh. It is distinctly covenanted and agreed between the parties hereto that all the covenants and agreements above expressed shall be held to run with and bind the land hereby conveyed and all subsequent owners and occupants thereof, until the first day of January, in the year nineteen hundred and fifty (1950), and acceptance of this deed shall have the same effect and binding force upon the party of the second part, its successors and assigns, as if the same were signed and sealed by the party of the second part; provided, however, that the covenants contained in the aforegoing paragraphs "Fifth" and "Sixth" shall be perpetual in their operation; and provided further that any of the covenants contained in this deed, except the covenants contained in the said paragraphs "Fifth" and "Sixth" may be at any time and in any manner changed with the mutual written consent of the owner or owners for the time being of the land hereby conveyed, and the Dundalk Company or any assignee of the Dundalk Company to whom it may delegate the power to give such consent.

Objection is made to this deed that it is not the covenant of the Fleet Corporation and is not binding on the Fleet Corporation's successors and assigns because it was not executed and acknowledged by that company. This objection may be well taken but is obviated, I think, by the deed of September 25, 1919. This deed was executed

by the same grantor and grantee and it was intended by them to modify the restrictions as to eleven of the lots included in the first mentioned deed, so as to permit the owner of said mentioned lots to "erect" and "maintain" on said lots "any business of an inoffensive character." The third of the described lots is a part of the defendant's property. This deed contains this covenant: "This agreement shall be binding on the successors and assigns of the parties hereto."

This deed is duly signed and acknowledged by the proper officers of the Dundalk Company and the Fleet Corporation. I think the second deed so signed and acknowledged by the Fleet Corporation validates and ratifies the first deed so as to make the first deed as binding on the Fleet Corporation and its successors and assigns as if it had been properly executed by the Fleet Corporation.

After the execution of the two deeds above recited the chain of the title runs as follows: The Fleet Corporation conveyed the tract to the Liberty Homes Corporation 29th September, 1919. By this time there were 296 dwelling houses on this tract of land.

The Liberty Homes Corporation on October 3, 1919, conveyed to Simon Cooper an unimproved rectangular lot, a part of said tract, fronting 131 feet on the east side of Willow Spring avenue and 120 feet on the south side of Patapsco street.

Simon Cooper and wife conveyed to Ernest T. Newell and wife, defendants, this same unimproved lot on 24th March, 1922.

As heretofore stated, the deed of September 25, 1919, between the Dundalk Company and the Fleet Corporation had enlarged the restrictions as to eleven lots so as to permit them to be devoted to "business of an inoffensive character." The third of said lots is described in said deed as follows:

"A lot 26.875 feet in width and beginning at a point formed by the intersection of the south side of Patapsco avenue with the east side of Willow Spring road."

This lot is a part of the unimproved lot conveyed to the defendants. The defendants assumed, notwithstanding the obscurity of the description, that said 26.875 front was on Patapsco avenue and the lateral side of this lot on Willow Spring road and this location has not been disputed.

It will be seen that of defendant's lot 120 by 131, a part fronting 26. plus feet on Patapsco avenue with a depth of 131 feet on Willow Spring avenue, is subject to the restrictions as modified by the deed of September 25, 1919, and the balance of defendants' lot is subject to the restrictions in the original deed. This means for the purpose of this case that stores can be erected on the corner lot, but only dwellings can be erected on the balance. Thus the question arises: How much of this 26-plus lot can be devoted to stores? The whole of it 26-plus by 131 or the whole of it less the 15-foot set-back contained in the third restriction in the original deed?

I have come to the conclusion that the 15-foot set-back has been abrogated as to the eleven lots aforesaid for the following reasons:

First. It must be presumed that when the deed of September 25, 1919, conferred upon the owner of this lot 26.875 feet front on Patapsco avenue with a depth of 131 feet on Willow Spring avenue, the right to conduct and maintain stores upon it, it was the intention to grant a right which is valuable and usable. It thus appears that if the 15-foot set-back must be taken off, leaving a lot 11.875 feet by 131 feet on which stores may be erected, the right is of little or no use and value.

A court of equity will not aid one man to restrict another in the use to which he may lawfully put this property unless the right to such aid is clear. Every doubt and ambiguity in the language of a restricting covenant must be resolved in favor of the owner's right.

106 Atlantic Reporter 811, Marsh vs. Marsh; 5 A. & E. Ency. of Law 11; 82 Md. 203; Peabody-Hts. vs. Willson.

Second. Nine of these eleven lots had been improved by buildings by the Shipping Board, of which number five are on Willow Spring avenue. As to each of these lots the building thereon is only ten feet from the street and this condition existed at the time the deed enlarging the restrictions was executed. By permitting this 15-foot set-back restriction to be violated by the Shipping Board and then by executing the deed of September 25, 1919, in which this restriction is neither affirmed nor even metioned, and to which

deed the Dundalk Company and the Shipping Board were the only parties, the Dundalk Company has waived the enforcement of this 15-foot set-back restriction so far at least as the eleven lots mentioned in said deed are concerned.

Tiffany Real Property, 2d Ed. Vol. 2, page 1452; 137 Md. 39-44, Boyd vs. Realty Co.; 70 Md. 503, Newbold vs. Peabody Co.

Did the Newells have actual notice of these restrictions at the time they took title? I think they did.

It is true that the deed from Simon Cooper and wife to them dated March 24, 1922, does not mention restrictions on the land conveyed, but the deed to Cooper from Liberty Homes Corporation, dated October 3, 1919, does refer to such restrictions, and Mr. Newell was an officer of the Liberty Homes Corporation. It is reasonable to presume that Mr. Newell or his counsel in examining title saw this deed to Cooper at the time the Newells took title. Furthermore the correspondence between Mr. Newell and the Dundalk Company beginning June 2, 1922, and ending August 25, 1922, which has been offered in evidence satisfies me that he did have actual notice of these restrictions.

But the question of actual notice is immaterial; the deeds by which the restrictions were created were directly in his chain of title. He therefore had constructive notice of them.

55 Md. 222, Abell vs. Brown, trustee; 124 Md. 686, Lowes vs. Carter; 119 Mass. 549, Peck vs. Conway.

The complainant acted with due diligence in protesting against this infringement as shown by the correspondence between the parties, and nothing has occurred which can be charged against complainant's right of action as laches or acquiescence.

See 179 Mass., 399-400, Bacon vs. Sandberg.

The defendants have a right under the circumstances above recited to erect and maintain shops fronting on Willow Spring road with fronts on the building line and running back 26.875 feet, but all that part of these structures located beyond that depth on land subject to the restrictions in the original deed were erected in violation of those restrictions and to that extent the relief prayed for will be granted.