# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed November 5, 1928.

F. WILLIAM KOETHER, ET AL.,

VS.

ALLEN P. MILLER AND FADELY C. MILLER, CO-PARTNERS, TRADING AS MILLER & MILLER.

*Arthur E. Hamm* solicitor for complainants.

*Earl W. Blackburn* solicitor for defendants.

SOLTER, J.—

This is a demurrer to a bill by several lot owners in a development named "Alvarado," to restrain other lot owners from building houses costing less than $6,000. The bill, in substance, alleges that one Moreland and wife (hereafter referred to as Moreland) owning about 16 acres of land subdivided it into lots each with a frontage of 25 feet, by means of a plat which was duly recorded among the Land Records of Baltimore. Moreland gave the name of "Alvarado" to his development and began selling lots, some of which were purchased by the complainants. The deed to the purchasers contained restrictions as to set-back, projections and also house costs, which was stipulated to be not less than $6,000. The bill alleges an oral representation by Moreland as an inducement to the purchase by complainants that no dwelling house would be permitted to be erected in the subdivision which would cost less than $6,000; and it is alleged that this, as well as the other restrictions were part of a general and uniform plan or scheme for the benefit of all the property owners of said lots in said sub-division, and for the mutual benefit and protection of all, all of which entered into the consideration of the respective purchases.

The bill then further alleges that Moreland laid out the streets shown on the plat, paved sidewalks, procured electric light service for the sub-division and erected thereon "a large sign advertising lots therein as being in a restricted development."

The complainants allege that they have each built upon their respective lots dwellings in excess of the proscribed minimum price; that Moreland has conveyed to the defendants 15 lots subject to the same restrictions, and that they have recently started or contemplate and intend to start the erection of dwelling houses on each of the lots in violation of the minimum cost restriction.

Paragraph 6 of said bill is as follows:

"That said restrictions were imposed upon said sub-division as part

of a general and uniform plan or scheme for the mutual benefit and protection of all the owners of lots in said sub-division."

Paragraph 8 of said bill is as follows:

"That the said Moreland and wife have sold and conveyed all of said lots excepting 25; and in all of said deeds for said lots so conveyed it it manifestly evident that said sub-division was developed according to a uniform plan or general scheme for the mutual benefit and protection of all the property owners therein, and that no dwelling could be erected thereon costing less than $6,000 which said deeds, plat and physical development constitute actual or constructive notice to the defendants and all others of the character of the development and restrictions imposed thereon; and that the defendants purchased their lots subject thereto."

The complainants contend that under all the allegations of the bill the restrictions imposed by the developer, Moreland, constitute a general plan or scheme for the improvement of the property such as should enable lot owners, grantees from the common owner, to maintain actions inter sese for the enforcement of such restrictions.

The law as to who may enforce the building restrictions is fairly well settled in the State. No question can arise regarding the right of an immediate covenantee to enforce the restriction against his covenantor, the covenant, however, being controlled by its terms. Where the covenantor has expressly bound his heirs and assigns the covenantee may enforce the restrictive covenant against them. Halle vs. Newbold, 69 Md. 265; Clem vs. Valentine, Court of Appeals, May 2, 1928, D. R., May 10, 1928, and cases therein cited. Where the covenantor has not expressly bound his heirs or assigns, it may also be enforced against them. The rule is that a restrictive covenant entered into between a vendor and vendee in respect to the manner of using property, will be enforced as against the vendee and lessee, and his assigns, without respect to the question as to whether the covenant does or does not run with the land. If the covenant be of a character to create a right and an equity in favor of the vendor or lessor, and those claiming in his right, as against those holding the land a court of equity will grant relief. If the restriction would be enforceable against the vendee or lessee, it would be equally so against subsequent purchasers with notice. Newbold vs. Peabody Heights Co., 70 Md. 493; Summers vs. Beeler, 90 Md. 474-9, and cases cited infra.

The right of an heir or subsequent grantee of the land retained by the original grantor who imposed the restrictions, to enforce them is clear if the right is expressly reserved to the heirs or assigns of such grantor; if it is not expressly reserved it may nevertheless be enforced by such heir or grantee, if it appears the particular covenant was designed for the purpose of benefitting the land retained by the common grantor. Clem vs. Valentine, supra, and cases therein cited.. In this case the Court said, "Whether a person not a party to a restrictive covenant has a right to enforce it therefore depends upon whether the covenant was made for the benefit and advantage of the land retained by the covenantee, and at the time of the suit owned by the complainant, and this question is largely determined by the intention of the parties in imposing the restriction. It is incumbent upon the complainant to show that such was the intention of the original grantor."

The principles above stated relate to the enforcement of the covenant by the covenantee or his heirs or assigns of the land retained. In proceedings against the vendor who has imposed the restriction, or his grantees the following rules apply.

The mere fact that the vendor has imposed restrictions on certain lots conveyed does not make the same restrictions binding on his own lands; and the fact that he binds himself by covenants as to his own lands does not make them follow the lands and bind his heirs unless he expressly so states, Wood vs. Stehrer, supra. In other words the covenant exacted of the vendee by the vendor may be for his own protection without any reciprocal obligation upon his part to restrict his retained lands. What he has actually covenanted is altogether a matter of intention upon his part, and this is a question of fact to be determined upon the same rules of evidence as other

questions of intention, Summers vs. Beeler, 90 Md. 474. So to ascertain intention the Court will construe the terms of any express covenant made by the grantor. In Wood vs. Stehrer, supra, the grantors limited the covenant to say they would not convey to others except under and subject to the same restrictions as were contained in the deeds to the complainant. They did not covenant as to *their own use* and when the property passed to their heirs and was later conveyed by them the construction placed by the Court upon the covenant was that it did not apply to that particular devolution of title and conveyance.

Where the grantor expressly imposes the restriction upon the land retained in favor of the land sold, and especially if he binds his heirs and assigns in the covenant it will be enforced against any assignee with notice. Lowes vs. Carter, 124 Md. and cases cited.

In proceedings for the enforcement of restrictions between grantees from the common grantor, the general rule is that there exists no privity of contract between them, in the absence of appropriate terms binding the heirs and assigns of both the grantees and the common grantor; but an exception to this exists where the Court finds the lots were conveyed in pursuance of a general plan or scheme of development, and in the case at bar it is recognized that this proceeding cannot be maintained as one inter sese unless sufficient facts are alleged in the bill of complaint to support such a scheme or plan.

The Court of Appeals of Maryland has recognized the principle of a general plan or scheme but in only one case has it expressly recognized the facts apart from recorded stipulations either alleged or proven as measuring up to its requirements, viz., Baltimore City vs. Garrett, 108 Md. 24, which will be considered later.

The general rule adopted by our Courts is found in the English case of Nottingham Brick and Title Col., followed and approved in Summers vs. Beeler, 90 Md. 482, and in many other cases. The rule is as follows: "The principle which appears to me deducible from the cases is, that when the same vendor selling to several persons, plots of land, parts of larger property exacts from each of them covenants imposing restrictions upon the use of all plots sold without putting himself under any corresponding obligation, it is a *question of fact* whether the restrictions are merely matters of agreement between the vendor and himself and his vendees, imposed for his own benefit and protection, or are meant by him, and are understood by the buyers to be for the common advantage of the several purchasers. If the restrictive covenants are simply for the benefit of the vendor, purchasers of other plots of land from the vendor cannot claim to take advantage of them. If they are meant for the common advantage of a set of purchasers, such purchasers and their assigns may enforce them inter sese for their own benefit. And following the decision in Milligan vs. Jordon, 50 N. J. Eq. 363, our Courts have also said: "The right of grantees from a common grantor to enforce inter sese covenants entered into by each with said grantor, is confined to cases where there is proof of a general plan or scheme for the improvement of the property, and its consequent benefit, and the covenant has been entered into as part of a general plan to be exacted from all purchasers, and where the purchases have been made with reference to the plan or scheme and the covenant has entered into the consideration of his purchase."

Where the Courts have enforced the restrictions because they were part of a plan, "it is not because the plan is deranged, but because rights are invaded or about to be; and the fact may exist in a plan of two lots as well in one or two hundred. The plan often furnishes the proof of the terms on which sales are made, but the fact of the alleged terms is as effective when proved by a single deed as when proved by a plan," Summers vs. Beeler, supra.

One of the chief facts usually relied upon by the complainants to establish a general scheme is the fact that the common grantor has inserted in each of his deeds conveying property the same restrictions binding upon each grantee. This has been held in itself not sufficient evidence of the covenant having been entered into for the benefit of other lands conveyed by the same grantor, Summers

vs. Beeler, 90 Md. 474; Ringgold vs. Denhart, 136 Md., and cases therein cited.

In Safe Deposit Company vs. Flaherty, 91 Md. 489, the Canton Company had executed a deed to Gelston with restrictive covenants and later released the lot from them. The objection raised to the title was that other grantees of the Canton Company might enforce the restriction. The Court held that there was an absence of a general scheme, although recognizing the principle that "in order to carry out the plain intent of the parties, it will be construed as creating a right or interest in the nature of an easement to the remaining land of the grantor, and the right and burden thus created will respectively pass to and be binding on all subsequent grantees of the respective lots of land." But this proposition has been held by high authority to be confined to cases where there is a general plan."

In Summers vs. Beeler, frequently hereinbefore referred to, which arose from conveyances in the City of Hagerstown by a certain Mr. Keedy, the Court denied the existence of a general plan. The Court said: "But in the case before us, though Mr. Keedy took pains to record before sale a plat of the land and a description of the lots, he nowhere mentioned any restrictions or conditions as to their use. There was no auction sale at which restrictions or conditions were made known to the public, nor was such announcement made in any other manner. Not only so, but the five lots first sold were sold without any restrictions. We think therefore the conduct both of the vendor and of the purchasers forbids the conclusion that their intent and understanding was that these restrictions were part of a general plan or scheme for the benefit of all the purchasers."

The case of Peabody Heights Co. vs. Willson, 82 Md. 186, was a sequel to Newbold vs. Peabody Heights Co., 70 Md. 493. In the latter case it was decided that the restrictions placed upon lots in a large section in the northern part of the city by William Holmes in his conveyance to the Peabody Heights Company, *through a recorded agreement* prevented the lots from being free and unincumbered. The Willson case was the result of an effort to correct the title and have the property released from the restrictions. It therein appeared that Holmes had retained 400 feet for himself and this had been conveyed to the Kelso Home. The Home released the Peabody Heights Company from the restrictions and the trustees of the Holmes estate conveyed the reversionary interest of the estate to the Peabody Heights Company. Therefore the only persons who might enforce the restrictions would be the prior grantees of the Peabody Heights Company. The Court decided the title defective, holding that by the agreement the restrictions were intended for the common advantage of all persons purchasing from the company, and that such purchasers and their assigns could enforce the restrictions inter sese for their own benefit. The Court said, "In ascertaining the intention of the parties, we must bear in mind that we are not dealing with restrictions imposed upon a piece of land consisting of several building lots merely, but a tract containing *thirty-six acres adjoining Baltimore City*, with some of the principal streets running through it, and as such desirable and valuable for building purposes. And such was the object for which it was bought. Before the sale was consummated, the memorandum providing for the incorporation of the company was submitted to Holmes for his approval. The purpose was to make the property in every way attractive and desirable for suburban and city homes, and the covenants and agreements were made in furtherance of this general plan or scheme."

In Mayor and City Council vs. Garrett, 108 Md., testimony on the bill and answer was taken and the restrictions related to "Chestnut Hill." In fifteen out of seventeen deeds there were restrictions which were held to be conditional according to the terms of a covenant that the grantors should cause the same covenant to be inserted in all other deeds to other purchasers of the remainder of Chestnut Hill. It appears that one Grabenhorst who was a predecessor in title of Miss Garrett had purchased certain lots through an executors sale, the *advertisement* of which showed a division of Chestnut Hill into a number of sites for rural homes. The Court held that from the proof in the case the restriction was

part of a general scheme, and further said, "That this is the construction the parties themselves placed upon it, is practically demonstrated by the insertion of the same covenant in fifteen out of seventeen lots covering all the deeds for the parts of Chestnut Hill." The restriction was, however, held not binding because the executors had given a deed for a lot which failed to contain the restriction. This constituted a violation of the express condition upon which the restrictions in the other deeds were to be binding.

In Sullens vs. Finney, 123 Md. 653, the restrictions related to a development known as Edgecomb Park and were placed upon 79 lots after a mortgage had been given upon the property. This mortgage was foreclosed and it was held that, assuming the restrictions showed a general plan, they could not be held enforceable as against the mortgage which was anterior to the deeds containing the restrictions.

In Ringgold vs. Denhart, 136 Md. 146, the party seeking to enforce the restrictive covenants was the grantee of the developer. A number of lots had been sold subject to the restrictions, but there was no express covenant by the developer that she should bind her own property. There was proof that she had sold some lots not subject to the restrictions. The Court reduced the issue of law to the question of a general scheme and decided the proof did not justify holding there was such general plan. After stating the general principle that there must be something in the deed or other instrument, or some positive act done to show an understanding that such sales are all to be made subject to the restrictions, in order to enable the purchasers to enforce them inter sese the Court called attention to the principle that the mere insertion of the covenant in all deeds executed by the grantor is not sufficient. The Court refers to the Nottingham case as a "good illustration of what acts are sufficient" to show the general scheme. The Court said "There (speaking of the Nottingham case) the lots were sold at public auction and the conditions of sale were publicly announced. Sometimes a plat recorded or made shows the restrictions or an agreement showing them as to all the lots may be recorded. What is inserted in this deed not only fails to show such a general plan or scheme for the improvement of the property, as is required by Mulligan vs. Jordan, and adopted by this Court, by what it says, but what it omits to say is even more significant."

Boyd vs. Park Realty Company, 137 Md. 36, was another case like Sullens vs. Finney, where the developer took the property subject to a mortgage before conveying subject to restrictions. The foreclosure of the mortgage put an end to the restrictions. The deeds from the developer contained certain restrictions which stated that they "shall constitute and be a part of a general plan of improvements now being made and supplied said property." The deed also contained the statement that the covenants were part of the consideration for the deed. The Court did not hold expressly that the effect of these covenants was to establish a general plan, but did say "We are not prepared to definitely hold that there was not sufficient evidence of a general plan or scheme of improvement which would have enabled the purchasers to enforce inter sese the restrictions had it not been for the mortgage and its foreclosure."

In Beeten vs. Garrison, 129 Md. 664, the covenants in question arose out of a deed for the Mount Washington Realty Company to one Boyden. Some question arose as to the corporation's existence and its right to carry on business at the time of the conveyance because of its delay in paying its bonus tax, and the company and a prior owner united in a confirmatory deed to Boyden which conveyed a fee and made no reference to the restrictions. The Court said, "The covenant in the deed to Boyden is not to the company and its assigns. The deed does not contain a covenant on the part of the company to exact from other or subsequent purchasers of the land owned by its similar covenants, nor that the covenant in the deed to Boyden was entered into as part of a general plan by which similar covenants were to be exacted from all purchasers for the benefit of each purchaser. It would therefore seem clear under the decisions in this State that the covenants or restrictions in the deed to the mortgagor (Boyden) cannot be enforced by other purchasers of the property owned by the company. It was also held that the grantor could

not enforce the restrictions as might ordinarily be the case, because of the confirmatory grant in fee.

From this review of the decisions it will be seen that the case of Garrett vs. Mayor and City Council, supra, is the only one in which the Court has held either the allegations of the bills of complaint or the testimony taken shows a general plan or scheme apart from express restrictive covenants entered into by the common grantor either by agreement or in their deeds. In the Garrett case there was an advertisement which the Court said held out notice to all purchasers of the restrictions and was equivalent to a covenant by the grantors that they would insert restrictive covenants in each of the deeds of the purchasers. It should be specially noted however that in the deeds containing the restriction there was a recital that such restriction was a condition of the sale.

In the case now under consideration four things are alleged: First, that a plat was filed showing the streets and lots. This has been held not sufficient. It is a matter of common knowledge that plats are prepared for convenience of description of the lots carved out of the tract. The second fact is that all the deeds from the common grantor including those of the defendants show the same restrictions. This standing alone has also been held to to be insufficient as hereinbefore shown. The third fact is that the developer paved the streets and sidewalks and procured electric light service for the sub-division. This would not show any intention to make it part of a general scheme or plan. It would obvious-ly be an aid in the sale of the lots and yet leave the developer free to sell in the way which would seem most profitable to him. The fourth alleged is that Moreland erected upon said sub-division a large sign advertising lots therein as being in a "restricted development." No case has been referred to which establishes that such a fact not a matter of record brings the case within a general scheme.

While it is true that none of these facts would, if considered separately, constitute or prove a general scheme of improvement, nevertheless when taken in combination and as aggregate of acts relating to the development of a single tract of land, they should be

sufficient evidence of such intention upon the part of the grantor and his assigns.

In the case of Foreman vs. Sadler's Executors, 114 Md., at page 578, the English case of Elliston vs. Reacher was quoted with approval to this effect that to enable restrictive covenants to be enforced inter sese "It must be proved (1) That both the plaintiffs and defendants derive title under a common vendor; (2) that previously to selling the lands to which the plaintiffs and defendants are respectively entitled the vendor laid out his estate, or a defined portion thereof (including the lands purchased by the plaintiffs and defendants respectively), for sale in lots, and which though varying in detail as to particular lots, are consistent and consistent only with a general scheme of development; (3) that these restrictions were intended by the common vendor to be and were for the benefit of other lands retained by the vendor; and (4) that both the plaintiffs and the defendants, or their predecessors in title purchased their lots from the common vendor upon the footing that the restrictions subject to which the purchases were made were to inure for the benefit of the other lots included in the general scheme whether or not they were also to inure for the benefit of other lands retained by the grantors. If these four points be established, I think the plaintiffs would in equity be entitled to enforce the restrictive covenants entered into by the defendants or their predecessors with the common vendor irrespective of the date of the respective purchases."

This Court is of the opinion that the allegations of the bill of complaint meet the requirements of these four points and when in connection with the direct and specific allegations as a statement of fact that the restrictions were imposed upon the sub-division as a part of a general and uniform plan or scheme for the mutual benefit and protection of all other owners of lots in said sub-division, should be sufficient to hold it. Whether in the light of the facts alleged in the case of Koether vs. Otto, hereafter considered and pressed in argument in this case, this complainant can establish his allegations in this case, is something the Court cannot now consider.

The demurrer will be overruled.